UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80091 CIV-MIDDLEBROOKS/JOHNSON

THE WATERSHED TREATMENT
PROGRAMS, INC., a Florida Corporation,

    Plaintiff,

vs.

UNITED HEALTHCARE INSURANCE
COMPANY, INC., a Connecticut Corporation,
UNITED BEHAVIORAL HEALTH, INC.,
a California Corporation, and INGENIX, INC.,
a Delaware Corporation,

    Defendants.
_____/

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

      This Cause comes before the Court on Defendants' Motion to Dismiss (DE 12), filed March 12, 2007. The Court has reviewed the record and is fully advised in the premises.

Plaintiff filed its complaint on January 30, 2007, stating causes of action for breach of implied-in-fact contract, promissory estoppel, fraudulent misrepresentation, civil conspiracy and declaratory judgment. Defendants have responded by filing the instant motion to dismiss.

**I. Plaintiff's Complaint**[1]

Plaintiff The Watershed Treatment Programs, Inc. ("The Watershed") is a substance abuse treatment facility headquartered in Boynton Beach, FL, with other treatment facilities located in Boca Raton, FL, and Clearlake, Texas. Defendant United Healthcare Insurance

---

[1] All factual allegations in this section are drawn from Plaintiff's complaint and accepted as true for the purpose of this motion to dismiss.

Company, Inc., ("UHIC") is a Connecticut stock company that offers health insurance. Defendant United Behavioral Health, ("UBH") is a third party administrator of health plans and does not itself provide health insurance.[2] Defendant Ingenix performs reviews of medical records for claims administered by UBH on behalf of UHIC and its affiliates.

The Watershed alleges that it had a course of dealing with UHC over a period of years, where UHC administered and paid The Watershed's substance abuse and treatment claims in a consistent manner. Plaintiff states that UHC routinely preauthorized and certified treatment at The Watershed's facilities for all levels of care and treatment.

Plaintiff alleges that in early 2005, UHC embarked on an overall scheme to reduce paid claims and increase profits by implementing a new procedure to process non-network substance abuse treatment claims. To carry out this procedure, UHC turned to Defendant Ingenix. The Watershed claims that all the Defendants conspired to deny, delay or diminish payment to Plaintiff.

As part of the alleged conspiracy, UHC continued to pre-authorize or certify certain treatment at The Watershed's facilities, and agreed or otherwise promised to reimburse The Watershed for treatment services rendered, when it knew it had no intention to actually pay.

Plaintiff contends that these actions are deliberate and malicious, and that they are intended to (1) inappropriately reduce the length of stay or level of care provided to UHC insureds, (2) eliminate clinically necessary levels of care, (3) force The Watershed to join UHC's provider network, and/or (4) cease treatment to UHC insureds.

---

[2] Plaintiff's Complaint refers to UHIC and UBH collectively as "UHC." Defendant objects to this classification, noting that the two companies are distinct entities. For purposes of this motion to dismiss only, I will utilize the terminology from Plaintiff's complaint.

**II. Legal Analysis**

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v King & Spaulding*, 467 U.S. 69, 73 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "Conclusory allegations in the complaint need not be taken as true and the plaintiff must allege sufficient facts to support his allegations." *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir. 1986).

Defendants move for dismissal of the counts for breach of implied in fact contract, promissory estoppel, fraudulent misrepresentation and civil conspiracy, arguing that Plaintiff has failed to plead sufficient facts to support the claims. Defendants also argue that this Court lacks jurisdiction to rule on Plaintiff's claim for declaratory relief. Finally, Defendants argue that the complaint as a whole represents impermissible "shotgun pleading." I will address these arguments in turn.

**A. Count for Breach of Implied in Fact Contract**

In analyzing Plaintiff's state law claims, I must apply the substantive laws of Florida, the forum state. *See Peoples Bank of Polk County v. Roberts*, 779 F.2d 1544, 1545 (11th Cir. 1986), citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Florida courts have described contracts implied in fact as follows:

3

> A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words. Where an agreement is arrived at by words, oral or written, the contract is said to be express. A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement. It is to this process of defining an enforceable agreement that Florida courts have referred when they have indicated that contracts implied in fact rest upon the assent of the parties.

*Commerce P'ship 8098 Ltd. P'ship v. Equity Contr. Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997) (internal citations omitted).

As a basis for its implied in fact contract claim, Plaintiff alleges that its communication with Defendants seeking preauthorization for services to particular patients constitutes an offer to provide those services at a specific price. When the Defendants respond to this communication by providing a preauthorization or certification code, Plaintiff alleges that this constitutes acceptance of its offer to provide services. *See* Pl. Comp. ¶¶41-42. However, none of the documents sent to Defendants in this initial communication contained specific prices. Instead, the documents contain revenue codes. *See* Pl. Ex. A.

The Watershed contends that Defendants assent to be bound by this implied contract in several ways. After Defendants provide the preauthorization code, The Watershed faxes an acknowledgment of the level of treatment to be provided, length of stay, and revenue code for payment, and this fax requires UHC to notify Plaintiff if the terms of the agreement are incorrect. *See* Pl. Comp. ¶¶43-45, *see* Pl. Ex. A. Additionally, The Watershed alleges that once a patient has been admitted, it undertakes concurrent reviews with a UHC care manager to ensure that the patient is receiving appropriate care. *See Id.,* ¶¶49-51.

Defendants argue that this course of conduct is insufficient to constitute an implied in fact contract, as there is no way to infer from Defendants' conduct that they intended to be bound by Plaintiff's alleged offer.  However, this argument essentially attacks the merits of Plaintiff's claim, and this is inappropriate at the motion to dismiss stage.  As the court noted in *Commerce P'ship 8098 Ltd. P'ship* , examination of the parties conduct is a fact-based inquiry, something that cannot be resolved in a motion to dismiss.

The Defendants also argue that since no specific prices are mentioned, it is unreasonable to assume that they intended to enter into any contractual arrangement by preauthorizing services. However, given the Parties' prior course of dealing, I cannot say at this stage that Plaintiff could not prove any set of facts to support its assertion that a contract existed even without the mention of a specific price for the services.  At this stage of the proceedings, the Plaintiff has plead sufficient facts to sustain its claim for breach of implied contract, as the threshold of sufficiency that a complaint must meet is exceedingly low.  *See Ancata v. Prison Health Servs. Inc.*, 769 F.2d 700, 703 (11th Cir. 1985); *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

Defendant also contends that the Employee Retirement Income Security Act ("ERISA") preempts the Plaintiff's breach of implied contract claim. ERISA § 514(a) preempts all state laws insofar as they "relate to" any employee benefit plan covered by the Act. 29 U.S.C. § 1144(a) (1988). *Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529, 1532-1533 (11th Cir. 1994).  State law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).  However, some state law may affect an ERISA plan in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to'

the plan." *Id.*

Defendants' ERISA preemption argument is premature at this stage, as Plaintiff is not claiming an assignment of rights or benefits from insured individuals. Therefore, there is no need to analyze whether the law here "relates to" to the plans at issue.

**B. Promissory Estoppel Count**

The Florida Supreme Court defined promissory estoppel and its elements as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.
>
> The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice. Satisfaction of the latter requirement may depend on the reasonableness of the promisee's reliance ...

*W.R. Grace & Co. v. Geodata Services, Inc.*, 547 So. 2d 919, 924 (Fla. 1989).

The Watershed contends that UHC's act of providing a preauthorization or certification code represents a promise to pay for Plaintiff's services. On the issue of reasonable inducement, Plaintiff argues that Defendants could have reasonably expected that The Watershed would perform the services in question after receiving preauthorization from UHC. The Watershed also states that it relied on UHC's promise when it treated patients that had received preauthorization for services. Finally, Plaintiff states that it has suffered losses from treating patients in reliance on UHC's promise.

In response, Defendants argue that insurance cannot be created or extended by estoppel, unless the failure to enforce a promise would result in other injustice. *See Crown Life Insurance Co. v. McBride*, 517 So. 2d 660, 662 (Fla. 1987); *State Farm Mut. Auto. Ins. Co. v. Hinestrosa*,

614 So. 2d 633, 636 (Fla. 4th DCA 1993). While Defendants are correct that estoppel cannot create insurance coverage where none exists, that is simply not the claim Plaintiff is making in its complaint. Rather, Plaintiff argues that Defendants did in fact authorize coverage of The Watershed's patients and promise to pay, The Watershed relied on the promise in treating the patients, and then Defendants refused to pay for the services Plaintiff provided.

Defendant also argues that Plaintiff's allegations could not constitute reasonable inducement, one of the key elements of a promissory estoppel claim. However, as mentioned earlier, an analysis of what constitutes reasonable inducement is improper at the motion to dismiss stage. Here the Plaintiff has plead the necessary elements to support a claim for promissory estoppel, and that is all that is required to survive a motion to dismiss.

### C. Count for Fraudulent Misrepresentation

The elements necessary to establish a cause of action for fraudulent misrepresentation are: (1) a false statement or misrepresentation of a material fact; (2) the representor's knowledge at the time the misrepresentation is made that such statement is false; (3) such misrepresentation was intended to induce another to act in reliance thereon; (4) action in justifiable reliance on the representation; and (5) resulting damage or injury to the party so acting. *See Thor Bear, Inc. v. Crocker Mizner Park*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994), *citing Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985).

Plaintiff herein has adequately plead the elements necessary to sustain a claim for fraudulent misrepresentation at the motion to dismiss stage. The Watershed alleges that Defendants made false statements preauthorizing care when they had no intention of making any payments for those services to Plaintiff. Plaintiff then states that the preauthorization was

7

intended to induce The Watershed to undertake the treatments for which it was seeking authorization. The Watershed also argues that it justifiably relied on the alleged misrepresentations, and that it suffered damages when Defendants refused to make any payments.

Defendants' arguments again attack the merits of the Plaintiff's allegations. While they may have a strong argument that no fraudulent misrepresentation occurred, an examination of the merits is inappropriate here.

**D. Civil Conspiracy Count**

The elements of a civil conspiracy in Florida are: (1) a conspiracy between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *See Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).

An actionable conspiracy generally requires an actionable underlying tort or wrong. *See Id.* However, an alternative basis for a civil conspiracy claim exists where the plaintiff can show some "peculiar power of coercion" possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess. *See Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547 (Fla. 1977) (jai-alai players stated claim for conspiracy against jai-alai fronton owners who allegedly conspired to prevent players from getting jobs in arenas after a players strike); *Snipes v. West Flagler Kennel Club, Inc.*, 105 So. 2d 164 (Fla. 1958) (claim for conspiracy was stated against five kennel club owners who refused the plaintiff greyhound racer privileges at their tracks and used intimidation to drive the plaintiff out of business); *Margolin v. Morton F.*

*Plant Hospital Ass'n., Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) (physician stated a claim for conspiracy against a group of anesthesiologists who refused to provide their services to plaintiff's patients, depriving him of his hospital privileges, and thereby driving him out of his practice).

This form of civil conspiracy is known as the "force of numbers exception," whereby a conspiracy may exist without the underlying tort or wrong. *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990). However, a showing of mere malice is not enough, and the "force of numbers" exception is intended to be a narrow one. *Id., citing Liappas v. Augoustis*, 47 So. 2d 582, 583 (Fla. 1950).

Plaintiff herein relies on the force of numbers exception, as it does not allege a distinct, underlying and actionable tort or wrong. Rather, Plaintiff argues that the Defendants have combined to use their economic power to coerce The Watershed into (1) inappropriately reducing length of patient stays; (2) providing treatment at reduced, unsound levels; and (3) treating patients properly without receiving compensation. *See* Pl. Comp. ¶¶151-152.

Although the Plaintiff's complaint makes repeated references to the Defendants' numbers and economic power, the alleged conspiracy here does not find support in existing Florida case law. In *Churruca, Snipes,* and *Margolin* the alleged conspirators all stood in a like relation to the Plaintiff, as noted above. They were independent entities that made independent choices to join the conspiracies and damage the respective plaintiffs. None of the individual defendants in those three cases could have committed the same harm to the pertinent plaintiff by acting alone.

Here the three Defendants do not all stand in a like relationship to The Watershed. This is not an alleged conspiracy by a group of insurers who are colluding in an attempt to disrupt the Plaintiff's business. There is only one insurer (UHIC) and its sister entities, rather than a group

of similarly situated defendants.

The facts of this case are very similar to the situation in *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025 (Fla. 3rd DCA 1981).  There the plaintiff physician alleged a conspiracy involving a hospital, two separate boards of trustees of the hospital, two hospital administrators, and the hospital's medical staff for not renewing his staff privileges.  *See Id.* at 1026.  The Florida appellate court found that the relationship of the respective defendants did not support a civil conspiracy claim under the force of numbers exception.  A combination of separate economic groups or forces did not exist, because the respective defendants acted as a single entity.  *See Id.* at 1029.

That situation is analogous to the present case.  Here Defendant UHIC is the actual insurer, Defendant UBH administers UHIC's health plans, and Defendant Ingenix performs reviews of medical records for claims administered by UBH on behalf of UHIC.  These three Defendants do not possess greater power by acting in conjunction with one another, as there is only one insurer that could make payments for services to the Plaintiff.  This case is more an example of an alleged vertical conspiracy amongst sister entities, rather than a horizontal conspiracy of entities all identically situated to a plaintiff, as in *Churruca, Snipes,* and *Margolin.* Florida case law does not support this construction of a force of numbers conspiracy, and Plaintiff's civil conspiracy claim fails as a matter of law.

**V. Declaratory Relief Count**

Defendant argues that Plaintiff's declaratory relief count must be dismissed because it is outside the jurisdiction of this Court.  The Supreme Court has laid out the test for jurisdiction over declaratory judgment actions as follows: the dispute must be "definite and concrete,

touching the legal relations of parties having adverse legal interests; and it must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007)(internal citations omitted).

Here the Parties do not appear to have adverse legal interests, as Defendants do not themselves have a legal interest in the Plaintiff's license rights. The instant litigation is not based off of the Plaintiff's license rights, rather it is founded on the alleged failure of Defendants to keep their promises or contractual obligations and pay Plaintiff for services that it rendered. Therefore, jurisdiction over Plaintiff's specific request for declaratory relief is lacking.

Even if jurisdiction over this count were found to exist, I would utilize my discretion to decline to decide the matter. The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), not that it must do so. This text has long been understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 776, *citing Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The determination of Plaintiff's licensure rights is best left to the state agencies that issued and administer the licenses. I shall therefore dismiss Plaintiff's count for declaratory relief.

Accordingly, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss is GRANTED IN PART. COUNTS IV AND V ONLY are DISMISSED WITH PREJUDICE.

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 10th day of April 2007.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

copies to counsel of record